**FILED**

APR 0 1 2014

**DISCIPLINARY BOARD**

BEFORE THE
DISCIPLINARY BOARD
OF THE
WASHINGTON STATE BAR ASSOCIATION

| | |
|---|---|
| In re | Proceeding No. 14#00003 |
| JAE H. SO, | NOTICE OF DISBARMENT |
| Lawyer | |
| WSBA No. 29915 | |

PLEASE TAKE NOTICE that by order of the Washington Supreme Court entered the 12th day of March, 2014, a copy of which is attached, lawyer Jae H. So, who practices in the City of Federal Way, was disbarred from the practice of law in the State of Washington, effective March 31, 2014. For more information, you may access the WSBA website www.wsba.org, or contact Debra Carnes, Chief Communications Officer, at debrac@wsba.org or (206) 733-5930.

DATED this 31st day of March, 2014.

WASHINGTON STATE BAR ASSOCIATION

Paula C. Littlewood
Executive Director

Notice of Disbarment
Page 1 of 1

005

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the _Notice of Disbarment_ _____
to be delivered to the Office of Disciplinary Counsel and to be mailed
to _Brett Purtzer_ _____ Respondent/Respondent's Counsel
at _11006 Ohainable #202, Tacoma, WA 98405_ by Certified/first class mail,
postage prepaid on the _1st_ day of _April_ _____, _2014_

_____
Clerk/Counsel to the Disciplinary Board

# THE SUPREME COURT OF WASHINGTON

IN RE:      )      BAR NO. 29915      RECEIVED
     )      MAR 1 2 2014
     )      Supreme Court No.
JAE H. SO,      )      201,291-4
     )
ATTORNEY AT LAW.      )      ORDER APPROVING
_____      )      STIPULATION TO DISBARMENT

        This matter came before the Court on the Washington State Bar Association Disciplinary Board's order approving Stipulation to Disbarment pursuant to ELC 9.1(c)(2), entered into by Jae H. So, his counsel, and WSBA Disciplinary Counsel on October 17, 2013. The Court reviewed the order and the stipulation and determined unanimously that the following order should be entered. Now, therefore, it is

        ORDERED:

        Jac H. So is disbarred from the practice of law. Pursuant to the stipulation, the effective date of disbarment is March 31, 2014. Costs and expenses, pursuant to ELC 13.9, as approved by the disciplinary board, and restitution, pursuant to ELC 13.7, as approved by the disciplinary board, will be paid by Jae H. So.

        DATED at Olympia, Washington this ___17th___ day of March, 2014.

            For the Court

Filed
Washington State Supreme Court

MAR 1 2 2014

Ronald R. Carpenter
Clerk

_Madsen, C.J._
CHIEF JUSTICE

685/523

804

FILED

JAN 1 4 2014

1

BEFORE THE DISCIPLINARY BOARD
DISCIPLINARY BOARD
OF THE
WASHINGTON STATE BAR ASSOCIATION

2

3

4          In re                                    Proceeding No. 14#00003

5              JAE H. SO,                            ORDER APPROVING STIPULATION

6              Lawyer (WSBA No.29915)

7

8

9          This matter came before the Disciplinary Board at its January 10, 2014, meeting.

10         On review of the October 17, 2013, Stipulation to Disbarment,

11

12         IT IS ORDERED that the Stipulation is approved.[1]

13

14             Dated this 13 day of January, 2014.

15

16                                    Andrew O. Carrington,
                                      Disciplinary Board Chair
17

                   CERTIFICATE OF SERVICE
18
           I certify that I caused a copy of the _Order Approving Stipulation_
19         to be delivered to the Office of Disciplinary Counsel and to be mailed
           to _Jae So_ _Respondent/Respondent's Counsel_
20         at _2105 S. 320th St. Tow Fed way, WA 98003_ by Certified/first class mail
           postage prepaid on the _14th_ day of _January_, _2014_
21
                   Clerk/Counsel to the Disciplinary Board
22

23         ───────────────
           [1]The vote on this matter was 13-0.  Those voting were: Bloomfield, Broom, Carrington, Coy, Davis, Dremousis,
24         Egeler, Evans, Fischer, McInvaille, Mesher, Neiland, and Smith.

Order Approving Stipulation                WASHINGTON STATE BAR ASSOCIATION
Page 1 of 1                                      1325 4th Avenue, Suite 600
                                                   Seattle, WA  98101-2539
                                                       (206) 727-8207

001



JAN 2 3 2014

DISCIPLINARY BOARD

**ORIGINAL**

BEFORE THE
DISCIPLINARY BOARD
OF THE
WASHINGTON STATE BAR ASSOCIATION

| | |
|---|---|
| In re | WSBA File Nos. 11-01832 and 13-01148 |
| **JAE H. SO** , | STIPULATION TO DISBARMENT |
| Lawyer (Bar No. 29915). | |

Under Rule 9.1 of the Rules for Enforcement of Lawyer Conduct (ELC), the following Stipulation to Disbarment is entered into by the Washington State Bar Association (Association), through disciplinary counsel Jonathan Burke, Respondent lawyer Jae H. So (Respondent), and Respondent's counsel Brett Purtzer.

Respondent understands that he is entitled under the ELC to a hearing, to present exhibits and witnesses on his behalf, and to have a hearing officer determine the facts, misconduct and sanction in this case. Respondent further understands that he is entitled under the ELC to appeal the outcome of a hearing to the Disciplinary Board, and, in certain cases, the Supreme Court. Respondent further understands that a hearing and appeal could result in an outcome more favorable or less favorable to him. Respondent chooses to resolve this proceeding now by entering into the following stipulation to facts, misconduct and sanction to

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA 98101-2539
(206) 727-8207

1  avoid the risk, time, expense and publicity attendant to further proceedings.

2        Respondent wishes to stipulate to disbarment without affirmatively admitting the facts

3  and misconduct in ¶¶ 8-16, 71-72, 79, 80, 85, and 89-90, rather than proceed to a public hearing.

4  Respondent agrees that if this matter were to proceed to a public hearing, there is a substantial

5  likelihood that the Association would be able to prove, by a clear preponderance of the

6  evidence, the facts and misconduct in ¶¶ 8-16, 71-72, 79, 80, 85, and 89-90.

7                  **I.  ADMISSION TO PRACTICE**

8        1.  Respondent was admitted to practice law in the State of Washington on May 25,

9  2000.

10                  **II.  STIPULATED FACTS**

11  **A.  REGARDING USE OF CLIENT FUNDS**

12        2.  From 2007 through 2010, Respondent's law practice involved assisting foreign

13  national clients who sought E2 visas by purchasing businesses in the United States.

14        3.  Respondent received substantial cash from clients to purchase businesses, pay

15  costs and expenses related to the purchase of the business, and to pay Respondent's attorney

16  fees.

17        4.  From February 2007 through February 2010, Respondent routinely deposited client

18  funds into a non-IOLTA account ending in number 1836 (Account 1836) at Pacific International

19  Bank (PI Bank).

20        5.  During the same period, Respondent's fee agreement provided that all interest

21  earned on client cash funds would be kept by Respondent's law firm.

22        6.  Under RPC 1.15A(i)(2), interest earned on funds held in non-IOLTA accounts

23  belongs to the client, not the lawyer.

24

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

7.    From February 2007 through February 2010, Respondent received $42,723.69 in interest earned on client funds held in Account 1836 at PI Bank.

8.    On September 30, 2009, Respondent deposited $155,000 belonging to client BS into Account 1836 at PI Bank so that BS could purchase a business.  At the time of the transfer, Account 1836 contained a balance of $39.67.

9.    On October 4-5, 2009, Respondent used $9,000 of funds belonging to BS being held in Account 1836 for personal purposes without the knowledge or authority of BS.

10.    On October 21, 2009 and October 23, 2009, Respondent made two wire transfers totaling $20,000 from Account 1836 to a bank account belonging to Sona, Inc. (Sona), a corporation owned by Respondent.  On the dates of the transfers, Sona's bank account had negative balances.  The $20,000 transferred by Respondent belonged to BS.  Respondent made these transfers without the knowledge or authority of BS.

11.    On October 26, 2009, Respondent transferred $59,000 of the funds belonging to BS from Account 1836 to the bank account of JN Investment, Inc. (JN Investment), a company owned by Respondent's clients but controlled by Respondent, without the authority or knowledge of BS.

12.    On or about October 28, 2009, Min Cha Na (Na), the "office manager" at Respondent's law firm, used $19,674 belonging to BS to pay Respondent's financial obligation without BS's authority or knowledge.

13.    On December 7, 2009, BS's business purchase was due to close, and BS's funds were due to be disbursed.

14.    On December 7, 2009, Respondent transferred $155,000 from the bank account of JN Investment to Respondent's IOLTA account, without the authority or knowledge of the

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

1   clients who owned JN Investment.    That same day, Respondent disbursed the funds for BS

2   from his IOLTA account.

3       15.    During the period from May 20, 2008 through July 7, 2008, Respondent made four

4   transfers of client funds from his IOLTA account totaling $110,431.78 for personal purposes

5   without the knowledge and authority of clients.

6       16.    On September 30, 2008, Respondent returned the $110,431.78 by depositing a

7   check issued from Sona, Respondent's corporation.

8   **B. AHN MATTER**

9       17.    In mid-March 2007, Respondent was hired to represent Korean nationals Charles

10  Ahn (Ahn) and Eun Soo Yoon (Yoon), collectively referred to as the Ahns, in seeking an E2

11  visa in the United States through the purchase and operation of a business.

12      18.    The Ahns wanted an E2 visa so that their children could be educated in the United

13  States.    To accomplish this, Respondent planned to incorporate a company in which Yoon

14  owned all the stock.

15      19.    During all material times, Yoon did not speak or read English proficiently.

16      20.    Respondent's fee agreement required the Ahns to pay a $5,000 flat fee for legal

17  services.

18      21.    As part of the process for obtaining an E2 visa, Respondent entered into a joint

19  venture arrangement with the Ahns where Respondent would locate and purchase a business for

20  the Ahns using their money and set up the management of the business.

21      22.    Respondent did not fully disclose and transmit in writing all of the terms of his

22  business relationship with the Ahns.

23      23.    On March 27, 2007, Respondent signed a purchase and sale agreement as agent for

24

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

1  the Ahns to purchase a Denny's restaurant for $230,000.

2      24.   In connection with the purchase of the Denny's restaurant, Respondent directed the

3  Ahns to wire $305,000 into Respondent's IOLTA account, which included Respondent's $5,000

4  flat fee.

5      25.   On April 12, 2007, Respondent executed a promissory note in favor of the Ahn for

6  $300,000 (the Ahn Note). Respondent drafted the Ahn Note.

7      26.   The Ahn Note required Ahn to deposit $300,000 into Respondent's IOLTA

8  account on or before April 11, 2007.

9      27.   Under the terms of the Ahn Note, Respondent was personally responsible to pay

10  back the principal to Ahn on August 1, 2010. The Ahn Note required Respondent to make

11  annual payments of interest only at an annual rate of four percent beginning on August 1, 2007.

12     28.   The Ahn Note was unsecured and did not include Yoon or the Ahns' marital

13  community as a holder.

14     29.   The Ahn Note included choice of law provisions requiring any litigation in King

15  County, Washington under Washington law. This provision could have impacted the ability to

16  enforce the terms of the Ahn Note because Ahn anticipated that he would continue to reside and

17  operate his business in Korea while Yoon and the Ahns' children resided in the United States.

18     30.   The Ahn Note and Respondent's joint venture with the Ahns created a significant

19  risk that Respondent's representation would be materially by his own personal interest.

20     31.   Respondent did not obtain an effective written waiver of any actual or potential

21  conflicts of interest at the time that he entered into the joint venture or the loan agreement with

22  the Ahns.

23     32.   Respondent did not disclose to the Ahns that he could use the $300,000 for his own

24

Stipulation to Discipline
Page 5

1  purposes without their knowledge or authority or that his use of the $300,000 could affect the

2  Ahns' ability to purchase a business.

3      33.   Respondent did not advise the Ahns in writing of the desirability of seeking

4  independent legal counsel in connection with the $300,000 loan to Respondent.

5      34.   Under the circumstances, the terms of the Ahn Note was unfair to the Ahns.

6      35.   On April 12, 2007, the Ahns wired $305,000 into Respondent's IOLTA account.

7      36.   On April 12, 2007, Respondent transferred the $300,000 wired by the Ahns from

8  his IOLTA account into Account 1836 at PI Bank and withdrew his $5,000 flat fee.

9      37.   On May 7, 2007, Respondent formed LG Investment Group, Inc (LG), a

10  corporation in which Yoon owned the stock.  LG was created as the entity that employed Yoon

11  for purposes of obtaining an E2 visa.

12      38.   The Denny's purchase did not close due to Yoon's lack of English proficiency.

13      39.   In September 2007, Na, Respondent's "office manager," located another

14  restaurant, Best of Bento, for the Ahns to purchase so that they would qualify for an E2 visa.

15      40.   On September 14, 2007, a purchase and sale agreement was signed by Na as

16  buyer's agent for the purchase of the Best of Bento for $385,000.

17      41.   On October 9, 2007, Respondent submitted a petition and letter to the US

18  Consulate in Seoul, Korea seeking an E2 visa in connection with the Ahns' purchase of the Best

19  of Bento.

20      42.   LG's purchase of the Best of Bento restaurant could not have closed because,

21  unbeknownst to the Ahns, Respondent had used $40,000 of the $300,000 paid by the Ahns for

22  other unrelated purposes on July 30, 2007.

23      43.   LG's purchase of the Best of Bento restaurant did not close.  Respondent never

24

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

1 | sent anything in writing to the Ahns explaining why the sale did not close.

2 |     44.   During the period from December 3, 2007 through February 8, 2008, Respondent

3 | disbursed the remaining $260,000 of the $300,000 paid by the Ahns for other purposes.

4 | Respondent did not inform the Ahns of his use of the $300,000.

5 |     45.   In April 2009, Ahn was denied entry into the United States when he informed US

6 | border agents that LG owned the Best of Bento restaurant and the agents discovered that the

7 | Ahns had no ownership interest in the Best of Bento.

8 |     46.   In April 2009, Respondent agreed to return the $300,000 to the Ahns, but

9 | Respondent was unable to keep up with the payments.

10 |     47.   The Ahns hired a lawyer to pursue collection of the money Respondent owed to

11 | them.

12 |     48.   On April 10, 2012, Respondent filed Chapter 7 bankruptcy.  In his bankruptcy

13 | schedules, Respondent listed the debt owed to the Ahns at $238,457.53.  This debt was

14 | discharged in Respondent's bankruptcy.  The Ahns reside in Korea.  Ahn is prohibited from

15 | entering the United States.

16 | **C. PARK MATTER**

17 |     49.   On October 6, 2006, Respondent was hired by Tae Shin Park (Tae) and Eun Song

18 | Park (Eun), collectively referred to as the Parks, to assist them in obtaining an E2 visa by

19 | purchasing a business in the United States.

20 |     50.   Respondent entered into an oral agreement with the Parks for a joint venture where

21 | Respondent would purchase a business for them and be responsible for operating the business.

22 | According to Respondent, under the terms of the joint venture arrangement, Respondent would

23 | be entitled to the profits from the business.

24 |

Stipulation to Discipline
Page 7

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

1    51.    During all material times, Eun was not proficient in speaking or reading English.

2    52.    In October 2006, the Parks deposited $200,000 into Respondent's IOLTA account

3    for the purpose of purchasing the business Photo Pro, a print shop.

4    53.    On October 17, 2006, Respondent formed JN Investment and filed the Bylaws for

5    JN Investment, a corporation in which all shares of stock were initially issued to Eun.

6    54.    The bylaws and other corporate documents drafted by Respondent for JN

7    Investment in October 17, 2006 made Jeong So, Respondent's brother, vice president and

8    registered agent for JN Investment.    The Parks did not know Jeong So and did not request

9    Respondent to make him an officer of JN Investment.

10    55.    By making Jeong So an officer of JN Investment, Respondent effectively

11    controlled JN Investment through Jeong So.

12    56.    A "certification" drafted by Respondent, dated October 17, 2006, gave Jeong So

13    the power to sell Photo Pro and execute all documents necessary for the sale of the business.

14    57.    On October 17, 2006, Respondent submitted the Park's petition for an E2 visa in

15    connection with the purchase of Photo Pro.

16    58.    The stock ledger for JN Investment reflects that all shares of stock were issued to

17    Jeong So on October 17, 2006.    The Park's were not informed of this transfer.

18    59.    On October 24, 2006, Respondent signed the Purchase and Sale Agreement as

19    agent for JN Investment to purchase Photo Pro.

20    60.    There was a significant risk that Respondent's representation of the Parks would be

21    materially limited by his personal interest due to his and his brother's interest in the Parks'

22    business.

23    61.    Respondent did not obtain informed consent in writing regarding any actual or

24

Stipulation to Discipline
Page 8

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

1  potential conflicts of interest in connection with his involvement in Parks' business.

2      62.   On November 3, 2006, the United States Immigration Service approved the Parks'

3  E2 visa.

4      63.   The sale of Photo Pro did not close.  Respondent never sent the Parks anything in

5  writing explaining why the sale did not close.

6      64.   On December 22, 2006, Respondent transferred $200,000, representing the funds

7  paid by the Parks, from his IOLTA account into a bank account he opened under the name of JN

8  Investment.

9      65.   On or about January 9, 2007, Respondent borrowed $500,000 from the Parks for

10  personal purposes.

11      66.   Respondent prepared a promissory note for the loan (the Park Note).

12      67.   Under the terms of the Park Note, Respondent would pay no interest to the Parks,

13  and the note was unsecured.

14      68.   The terms of the unsecured no interest loan were not fair and reasonable to the

15  Parks.

16      69.   Respondent did not advise the Parks in writing of the desirability of seeking

17  independent legal counsel before borrowing the $500,000.

18      70.   On March 7, 2007, the King County Superior Court entered an order requiring

19  Respondent's law firm to disburse $10,000 that Respondent was supposed to have disbursed on

20  behalf of clients KL in connection with the sale of a business to JAL several years ago.  This

21  order was unrelated to the Parks and JN Investment.

22      71.   On March 7, 2007, Respondent transferred $10,000 from JN Investment's bank

23  account into his IOLTA account and issued a $10,000 check to JAL.  Respondent's deposit slip

24

Stipulation to Discipline
Page 9

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

1  reflected that the $10,000 from JN Investment was being used to pay JAL.

2      72.   Respondent's used $10,000 of Park's money without the knowledge or authority of

3  the Parks.   The $10,000 was eventually returned to JN Investment's bank account.

4      73.   On or about August 1, 2008, Respondent purchased the Palace, a restaurant in

5  Lakewood, Washington, on behalf of JN Investment for approximately $200,000.

6      74.   Since the purchase of the Palace, Na and Respondent manage and operate the

7  Palace restaurant.   Respondent has received the profits from the restaurant purchased by JN

8  Investment.

9      75.   Respondent made payments to the Parks but did not fully repay them.   Respondent

10  listed his personal debt to the Parks at $495,000 in his bankruptcy schedules.

11      76. The  Parks  filed  an  adversary  proceeding  regarding  the  dischargeability  of

12  Respondent's debt in Respondent's bankruptcy.

13      77. Respondent is currently in negotiations to settle the claims of the Ahns and the

14  Parks,  who  are  both  represented  by  lawyers.    It  is  anticipated  that  the  negotiations  will

15  determine the amount that Respondent is obligated to return to the Ahns and Parks.

16                      **III.  STIPULATION TO MISCONDUCT**

17      78.   By  keeping  $42,723.69  in  interest  that  accrued  on  client  funds  held  in

18  Respondent's  non-IOLTA  account,  Respondent  violated  RPC  1.15A(i)(2)  and  RPC  1.5(a)

19  (unreasonable fees).

20      79.   By using $107,675 of client funds belonging to BS for other purposes, Respondent

21  violated RPC 1.15A(b).

22      80.   By using $110,431.78 of client funds for personal purposes, Respondent violated

23  RPC 1.15A(b).

24

Stipulation to Discipline
Page 10

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

81.    By entering into an oral business relationship for a joint venture with the Ahns in connection with the representation of the Ahns, Respondent violated RPC 1.7(a), RPC 1.8(a), and RPC 1.8(b).

82.    By entering into a loan agreement under the terms of the Ahn Note, and by using the $300,000 paid by the Ahns for personal purposes unrelated to the Ahns, Respondent violated RPC 1.7 and RPC 1.8(a).

83.    By entering into an oral business relationship for a joint venture with the Parks in connection with representing the Parks, Respondent violated RPC 1.7(a), RPC 1.8(a), and RPC 1.8(b).

84.    By entering into an unsecured no interest loan for $500,000 with the Parks, Respondent violated RPC 1.7(a), RPC 1.8(a), and RPC 1.8(b).

85. By using $10,000 of the funds belonging to JN Investment, Respondent violated RPC 1.15A(b).

### IV.  PRIOR DISCIPLINE

86. Respondent has not prior discipline.

### V.  APPLICATION OF ABA STANDARDS

87. The following American Bar Association Standards for Imposing Lawyer Sanctions (1991 ed. & Feb. 1992 Supp.) apply to this case.

88. ABA Standard 4.1 applies to Respondent's conversion of client funds belonging to Respondent's clients, and interest earned upon client funds:

4.1 *Failure to Preserve the Client's Property*

4.11    **Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.**

4.12    **Suspension is generally appropriate when a lawyer knows or should**

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

**know that he is dealing improperly with client property and causes injury or potential injury to a client.**

4.13    Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

4.14    Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

89. Respondent knowingly converted client funds causing actual or potentially serious injury to clients when he used client funds for other purposes.

90. Disbarment is the presumptive sanction for converting client funds under ABA Standard 4.11.

91. Respondent knew or should have known that he was dealing improperly with client funds when he deposited the funds into a non-IOLTA fund in which Respondent received all accrued interest resulting in serious injury of $42,723.69.

92. Suspension is the presumptive sanction under ABA Standard 4.12.

93. ABA Standard 4.3 applies to Respondent's violations of the conflict of interest rules (RPC 1.7(a), RPC 1.8(a), and RPC 1.8(b):

***4.3 Failure to Avoid Conflicts of Interest***

4.31    **Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):**

(a)    **engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client; or**

(b)    simultaneously represents clients that the lawyer knows have adverse interests with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client; or

(c)    represents a client in a matter substantially related to a matter in which the interests of a present or former client are materially adverse, and knowingly uses information relating to the representation of a client with the intent to benefit the

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

1    lawyer or another and causes serious or potentially serious injury to a client.

2    4.32    Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes
3    injury or potential injury to a client.

4    4.33    Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own
5    interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

6
    4.34    Admonition is generally appropriate when a lawyer engages in an isolated
7    instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will
8    adversely affect another client, and causes little or no actual or potential injury to a client.

9

10    94. Respondent engaged in representing the Ahns and Parks knowing that the loans and

11    oral joint ventures were adverse to them with intent to benefit personally from the loans and

12    business arrangements.

13    95. Respondent's conduct caused serious and/or potentially serious injury to the Ahns

14    and Parks.

15    96. Disbarment is the presumptive sanction under ABA Standard 4.31(a).

16    97. The following aggravating factors apply under ABA Standards Section 9.22:

17    (b)    Selfish motive;

18    (c)    Multiple offenses; and

19    (d)    Substantial experience in the practice of law.

20    98. The following mitigating factors apply under ABA Standards Section 9.32:

21    (a)    Absence of a prior disciplinary record;

22    (b)    Remorse.

23    99. It is an additional mitigating factor that Respondent has agreed to resolve this matter

24

Stipulation to Discipline
Page 13

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA 98101-2539
(206) 727-8207

1    at an early stage of the proceedings.

2         100.   On balance the aggravating and mitigating factors do not require a departure

3    from the presumptive sanction.

4                   **VI.  STIPULATED DISCIPLINE**

5         101.   The parties stipulate that Respondent shall be disbarred for his conduct.

6         102.   The Association has agreed to request that the Supreme Court make

7    Respondent's discipline effective after March 30, 2014.[1]

8                      **VII.  RESTITUTION**

9         103.   Respondent is currently in Chapter 7 bankruptcy proceedings.  11 U.S.C. §

10    362(a)(6) prohibits "any act to . . . assess . . . a claim against the debtor that arose before the

11    commencement of the case" during the pendency of Respondent's bankruptcy proceedings.

12    Consequently, an automatic stay prohibits the Association from assessing the amount of

13    restitution Respondent must pay on the pre-bankruptcy claims of the Ahns and the Parks.

14         104.   Respondent agrees to pay to the Parks the amount determined by the Bankruptcy

15    Court in the pending adversary proceeding and/or the amount negotiated by the parties.  If the

16    amount owed by Respondent to the Parks is ascertained prior to the date that this Stipulation is

17    considered for approval, the Association will file a supplement to this Stipulation to provide

18    those amounts as restitution.

19         105.   The Ahns did not file an adversary proceeding in Respondent's bankruptcy and

20    their claim has already been discharged in Respondent's bankruptcy.  Consequently,

21    Respondent will not pay restitution to the Ahns, except under the terms of the provisions in the

22

23    [1] Respondent desires to delay the effective date of his discipline until May 21, 2014 because he is representing a client in immigration hearing scheduled for May 20, 2014.

24

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

1  following paragraph relating to the Lawyers' Fund for Client Protection.

2       106.    Reinstatement from disbarment is conditioned on payment of restitution to

3  clients or third parties (including the Lawyers' Fund for Client Protection), as described herein

4  and pursuant to Rule 25.1(d) of the Admission to Practice Rules (APR).

5       **VIII.  COSTS AND EXPENSES**

6       107.    In light of Respondent's willingness to resolve this matter by stipulation at an

7  early stage of the proceedings, Respondent shall pay attorney fees and administrative costs of

8  $780.00 (representing $500.00 in expenses plus $280.00 in costs) in accordance with ELC

9  13.9(i).  The Association will seek a money judgment under ELC 13.9(l) if these costs are not

10  paid within 30 days of approval of this stipulation.

11       108.    Reinstatement from disbarment is conditioned on payment of costs pursuant to

12  Rule 25.1(d) of the Admission to Practice Rules (APR).

13       **IX.  VOLUNTARY AGREEMENT**

14       109.    Respondent states that prior to entering into this Stipulation he has consulted

15  independent legal counsel regarding this Stipulation, that Respondent is entering into this

16  Stipulation voluntarily, and that no promises or threats have been made by the Association, nor

17  by any representative thereof, to induce the Respondent to enter into this Stipulation except as

18  provided herein.

19       **X.  LIMITATIONS**

20       110.    This Stipulation is a compromise agreement intended to resolve this matter in

21  accordance with the purposes of lawyer discipline while avoiding further proceedings and the

22  expenditure of additional resources by the Respondent and the Association.  Both the

23  Respondent lawyer and the Association acknowledge that the result after further proceedings in

24

Stipulation to Discipline
Page 15

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA  98101-2539
(206) 727-8207

1   this matter might differ from the result agreed to herein.

2       111.   This Stipulation is not binding upon the Association or the respondent as a

3   statement of all existing facts relating to the professional conduct of the respondent lawyer, and

4   any additional existing facts may be proven in any subsequent disciplinary proceedings.

5       112.   This Stipulation results from the consideration of various factors by both parties,

6   including the benefits to both by promptly resolving this matter without the time and expense of

7   hearings, Disciplinary Board appeals, and Supreme Court appeals or petitions for review. As

8   such, approval of this Stipulation will not constitute precedent in determining the appropriate

9   sanction to be imposed in other cases; but, if approved, this Stipulation will be admissible in

10   subsequent proceedings against Respondent to the same extent as any other approved

11   Stipulation.

12       113.   Under Disciplinary Board policy, in addition to the Stipulation, the Disciplinary

13   Board shall have available to it for consideration all documents that the parties agree to submit

14   to the Disciplinary Board, and all public documents. Under ELC 3.1(b), all documents that

15   form the record before the Board for its review become public information on approval of the

16   Stipulation by the Board, unless disclosure is restricted by order or rule of law.

17       114.   If this Stipulation is approved by the Disciplinary Board and Supreme Court, it

18   will be followed by the disciplinary action agreed to in this Stipulation. All notices required in

19   the Rules for Enforcement of Lawyer Conduct will be made.

20       115.   If this Stipulation is not approved by the Disciplinary Board and Supreme Court,

21   this Stipulation will have no force or effect, and neither it nor the fact of its execution will be

22   admissible as evidence in the pending disciplinary proceeding, in any subsequent disciplinary

23   proceeding, or in any civil or criminal action.

24

Stipulation to Discipline
Page 16

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA 98101-2539
(206) 727-8207

1       WHEREFORE the undersigned being fully advised, adopt and agree to this Stipulation

2  to Discipline as set forth above.

3

4    _____      Dated: _____
    Jae So, Bar No. 29915
    Respondent

5

6    _____      Dated: _____
    Brett Purtzer, Bar No. 17283

7    Counsel for Respondent

8

9    _____      Dated: _____
    Jonathan Burke, Bar No. 20910
    Disciplinary Counsel

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA 98101-2539
(206) 727-8207

1       WHEREFORE the undersigned being fully advised, adopt and agree to this Stipulation

2 to Discipline as set forth above.

3

4 _____       Dated: 10/10/2013
    Jae So, Bar No. 29915
    Respondent

5

6 _____       Dated: 10/10/13
    Brett Purtzer, Bar No. 17283

7     Counsel for Respondent

8 _____       Dated: 10/17/13
    Jonathan Burke, Bar No. 20910

9     Disciplinary Counsel

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Stipulation to Discipline
Page 17

WASHINGTON STATE BAR ASSOCIATION
1325 4th Avenue, Suite 600
Seattle, WA 98101-2539
(206) 727-8207